

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Petitioner,

v.

SIDLEY AUSTIN BROWN & WOOD LLP, with respect to the matter of the tax liabilities of:

    JOHN DOES, United States taxpayers who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter" organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor, Brown & Wood LLP.

    Respondent.

**FILED**

DEC 29 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**03C 9355**

JUDGE KENNELLY

MAGISTRATE JUDGE MASON

DOCKETED

DEC 29 2003

### PETITION TO ENFORCE JOHN DOE SUMMONS TO SIDLEY AUSTIN BROWN & WOOD LLP

The United States of America, by its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, petitions this Court for an order enforcing a John Doe Summons issued to and served upon Sidley Austin Brown & Wood LLP.

### I. Introduction

1.    This proceeding is brought pursuant to §§7402(b) and 7604(a) of the Internal

Revenue Code (26 U.S.C.),[1] to enforce a "John Doe Summons" issued to and served upon Sidley Austin Brown & Wood LLP (SAB&W)[2]. SAB&W does business in this district at Bank One Plaza, 10 South Dearborn Street, Chicago, Illinois 60603.

2. Pursuant to §7601, the Secretary of the Treasury is directed to "cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." Pursuant to §7602, the Secretary or his delegate is authorized to summon records and testimony "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability." The IRS may summon any person "the Secretary may deem proper . . . to produce such books, papers, records or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry." §7602(a)(2).

3. The United States makes a *prima facie* case for enforcement of a summons when it demonstrates that the summons has been issued for a legitimate purpose, that the information sought is relevant to the purpose, that the summoned

---

[1] All "§" references are to the Internal Revenue Code, 26 U.S.C., unless otherwise specified. All "Govt. Ex." references are to the Appendix of Exhibits submitted in support of the Petition to Enforce Summonses. Some of those exhibits have been redacted to protect the privacy of tax shelter participants or to eliminate matters not relevant to this petition. However, none of these exhibits have been otherwise modified and are reproduced here in the form in which they were obtained.

[2] On April 30, 2001, Sidley & Austin merged with Brown & Wood LLP and is referred to herein as "SAB&W."

information is not already in its possession, and the administrative requirements for issuance of the summons have been satisfied. *United States v. Powell*, 379 U.S. 48 (1964). In addition, §7602(d) precludes the enforcement of a summons if there is a "Justice Department referral" in effect with respect to the taxpayer under investigation for the periods under investigation.

4. The IRS is conducting an investigation to determine the correctness of returns filed by, and the correct federal tax liabilities of, certain United States taxpayers who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter" organized or sold by SAB&W, *i.e.*, the John Doe class. Revenue Agent Florence Kan has been assigned responsibility to gather information from which the identities of the participants in the "potentially abusive tax shelters" can be determined.[3]

5. The IRS is also investigating the role of SAB&W in organizing and selling tax shelters to determine SAB&W's compliance with the registration and list maintenance requirements of §§6111 and 6112 and its potential liability for penalties imposed by §§6707 and 6708, during the period January 1, 1996 through the present. Revenue Agent Kan has also been assigned to the promoter investigation of SAB&W.

---

[3] Revenue Agent Richard Bosch was previously assigned to conduct the John Doe investigation. In September, 2003, Revenue Agent Kan was assigned primary responsibility for the investigation.

6.  To learn the identities of unknown participants in "listed transactions" and other "potentially abusive tax shelters" organized or sold by SAB&W, as part of IRS investigation to determine the correctness of returns filed by, and the correct liabilities of, participants in tax shelter transactions organized or sold by SAB&W, on October 9, 2003, a John Doe summons was issued to SAB&W. [Govt. Ex. 1].

7.  On October 14, 2003, the IRS was authorized by this Court to serve the John Doe summons upon SAB&W, upon the *United States' Ex Parte Petition for Leave to Serve IRS "John Doe" Summons*, (Civil No. 03C-7226, N.D. Il). [Govt. Ex. 2]. On October 15, 2003, the John Doe summons was served on SAB&W by delivering a copy to Thomas W. Albrecht at the Chicago office of SAB&W. [Govt. Ex. 1, p. 2].

8.  The John Doe summons demands that SAB&W provide the identities of United States taxpayers who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter" organized or sold by SAB&W.

9.  The John Doe Summons demanded compliance by October 27, 2003. Although SAB&W has provided the identities of some tax shelter participants to the IRS, SAB&W has not fully complied with the John Doe summons and represents that it has withheld the identities of over three-hundred and seventy (370) participants in these transactions because they have failed and/or refused to consent to SAB&W's disclosure of their identity to the IRS.

## II. SAB&W was Organizing and Selling Tax Shelters

10. The Congress and the Treasury have established a statutory and regulatory system designed to combat the use of abusive tax shelters. Two of the key statutory provisions are the registration and list maintenance requirements of §§6111 and 6112, respectively. [See Staff of the Senate Comm. on Finance, *Explanation of the Provisions Approved by the Committee on March 21, 1984*, S. Prt. No. 98-169, Vol. I at 425-426 (1984); *see also,* H.R. Conf. Rep. No. 98-861 at 982 (1984), *reprinted in* 1984-3 C.B. (vol. 2) 1, 236 (the relevant portions of both reports are reproduced in Govt. Exs. 32 & 33)]. Pursuant to §6111, "any tax shelter organizer" must register certain tax shelters with the IRS. Pursuant to §6112, "organizers and sellers" of potentially abusive tax shelters must maintain a list of investors (including certain identifying information) and other information about the tax shelter the Treasury has by regulation required. The identities and other information are to be provided to the IRS upon request. Shelters for which list maintenance is required are those for which registration is required under §6111(c) or (d), and "listed transactions," *i.e.,* those which the IRS has through notice, regulation or other published guidance, identified as tax avoidance transactions. Failure to comply with the registration and list maintenance requirements subjects the organizer or seller to monetary penalties pursuant to §§6707 and 6708.

11. The term "organizer," for purposes of §§6111 and 6112, includes persons principally responsible for organizing a tax shelter as well as persons who participate in the organization, management or sale of a tax shelter. "Any person

who discovers, creates, investigates or initiates the investment, devises the business or financial plans for the investment, or carries out those plans through negotiations or transactions with others" is an "organizer." Temp. Treas. Reg. §301.6111-1T, Q&A 27. Participation in the organization, management or sale of a tax shelter includes, among other things, "preparation of any document establishing the tax shelter (for example, articles of incorporation, a trust instrument, or a partnership agreement)," "preparation of any prospectus [or] offering memorandum," and "preparation of a tax or other legal opinion relating to the tax shelter" when, for example, the person performing the acts is related to the tax shelter or participated in the entrepreneurial risks or benefits of the tax shelter. A person will be considered related to the tax shelter or its principal organizer if the person is employed by the shelter or organizer. Temp. Treas. Reg. §301.6111-1T, Q&A 28 & 30. "Participation in the management of a tax shelter includes managing the assets of the tax shelter [or] directing the business activity of the tax shelter." Temp. Treas. Reg. §301.6111-1T, Q&A 28. Participation in the sale of a tax shelter includes "instructing or advising sales persons regarding the tax shelter." Temp. Treas. Reg. §301.6111-1T, Q&A 31.

12.     The term "seller" generally includes any person other than the organizer "who receives consideration in connection with another person's right to participate in a tax shelter, [or] for services necessary to the organization or structure of such tax shelter..." Temp. Treas. Reg. §301.6112-1T, Q&A 5&6.

13. For example, the types of activities which may constitute organization and/or sale are:

    a. management of assets or business of the corporations (including subchapter S corporations) or partnerships involved in the tax shelter, direction of activities of banks involved with the shelter, or instructing or advising sales persons;

    b. involvement during the conception of the transactions and/or marketing to potential participants, or solicitation of investors;

    c. relatedness to the tax shelter or any principal organizer of the tax shelter, which would include employment by the shelter or its organizer, including being paid by the shelter or its organizer;

    d. participation in the entrepreneurial risks or benefits of the tax shelter, including whether compensation was based, in whole or in part, on whether interests in the tax shelter actually were sold or the value of the investment in the shelter.

*See e.g.*, Temp. Treas. Regs. §§301.6111-1T, Q&A 27-30.

14. Recently, Treasury issued final regulations under §6112, which define an "organizer" or "seller" of tax shelters to which the list maintenance requirements apply to include any person who is a "material advisor" with respect to that transaction. Treas. Reg. §301.6112-1(c). A "material advisor" is any person who is required to register a tax shelter under §6111. In addition a "material advisor" is any person who expects to receive a "minimum fee" in excess of certain amounts set forth in the regulations with respect to a transaction and provides a "tax statement" regarding a "potentially abusive tax shelter" to another material advisor or to a participant.

15. Pursuant to §6111(c), a tax shelter organizer must register a shelter which is expected to provide the purchaser over the first five years with more than two

dollars in tax benefits for every dollar invested and is required to be registered, or is sold pursuant to an exemption, under Federal or State law regulating securities, or is a substantial investment (a "substantial investment" is one in which the aggregate amount which may be offered for sale exceeds $250,000, and there are expected to be 5 or more investors). Pursuant to §6111(d), a tax shelter organizer must register "confidential corporate shelters." A confidential corporate shelter includes any "entity, plan, arrangement, or transaction," a significant purpose of which is "the avoidance or evasion of Federal income tax for a direct or indirect participant which is a corporation," which is offered under conditions of confidentiality and for which the promoter may receive fees in excess of $100,000 in the aggregate.

16. The IRS, through regulation, notice or other published guidance, has identified certain transactions as having a potential for tax avoidance or evasion, subjecting them to the list maintenance requirements of §6112 (in addition to §6111(c) and (d) shelters). Temp. Treas. Regs. §301.6111-2T(b)(2) and §301.6112-1T Q&A 3&4; Treas. Regs. §§301.6111-2(b)(2) and 301.6112-1(b)(2)(i)(A). Such transactions are called "listed transactions." The IRS considers a "listed transaction" and all substantially similar transactions to have been structured for a significant tax avoidance purpose. Listed transactions may also be §6111(c) or (d) shelters. The IRS has from time to time published notices of such "listed transactions." [See, e.g., Notices 2003-76 (summary of notices), Govt. Ex. 3].

17. SAB&W was involved in the organization and sale of potentially abusive tax shelters through, principally, its then-partner R. J. Ruble.

18. Based upon the IRS' investigation of SAB&W, its investigation of other promoters, and its examination of taxpayers who have engaged in certain "listed transactions" or other potentially abusive tax shelters, it appears that during the period January 1, 1996 through October 15, 2003, SAB&W was organizing and/or selling potentially abusive tax shelters, including those that are the same as or similar to transactions described by the IRS and identified as "listed transactions" in Notice 99-59 (Boss), Notice 2000-44 (Son-of-Boss, BLIPS, COBRA), Notice 2001-16 (MIDCO), Notice 2001-45 (basis shifting shelter, FLIPS/OPIS), and Notice 2002-21 (CARDS), as well as certain other transactions identified as Spread Options, Common Trust Fund, and Option Transfer that were organized or sold in conjunction with accounting firms and investment advisors.

19. It appears that SAB&W developed potentially abusive tax shelters with others, including KPMG, Ernst & Young, Diversified Group, Inc., Price Waterhouse, Bricolage/ICA, Arthur Andersen, Ahrens & DeAngeli, BDO Seidman, Multi-National Strategies, Chenery Associates, Presidio Advisors, Deutsche Bank, and Grant Thornton.

20. SAB&W has represented to the Government that upon the merger of the two law firms, Sidley & Austin and Brown & Wood, on April 30, 2001, SAB&W determined that it would no longer issue opinions to non-corporate tax shelter participants and that Ruble had agreed to discontinue issuing such opinions.

21. It appears, however, that Ruble, as a partner of the firm, continued to issue opinions to non-corporate tax shelter participants, and he continued to organize and sell transactions which were or later became potentially "listed transactions" or other potentially abusive tax shelters.

22. SAB&W has represented to the Government that on October 24, 2003, it expelled Ruble from the firm for breach of fiduciary duty and breach of the partnership agreement. SAB&W also represented that it expelled Ruble because, among other reasons, it learned that Ruble had continued after the merger to issue opinions to individuals with respect to "listed transactions" or other "potentially abusive tax shelters."

23. Further, SAB&W has represented to the Government that Ruble was unwilling to address questions raised by SAB&W about certain of the representations it had made to the IRS, based in large part on information provided by Ruble, and therefore, to the extent that these representations could not be fully verified, they should not be relied upon by the IRS. [See SAB&W letter dated November 4, 2003, Govt. Ex. 4].

24. SAB&W's reservations about the correctness and completeness of prior representations about SAB&W's involvement with "listed transactions" based on information provided by Ruble appear to have merit. For example, in a prior written description given to the IRS to explain SAB&W's involvement with the basis-shifting shelter described in Notice 2001-45 (FLIP/OPIS), it was represented that SAB&W's role was limited to issuing independent legal opinions to shelter

participants for a flat fee. The description contained no discussion of Ruble's involvement in the organization or sale of FLIP or OPIS. As set forth in detail in the Declaration of Revenue Agent Kan, however, it appears that SAB&W, primarily through Ruble, was involved in the organization and/or sale of FLIP and OPIS.

25. In addition, SAB&W and KPMG jointly developed the Bond Linked Indexed Premium Strategy (a/k/a BLIPS), which is the same as or substantially similar to transactions described in Notice 2000-44. SAB&W, through Ruble, also helped develop and promote with Diversified Group, Inc. the Option Partnership Strategy (OPS), which is the same as or substantially similar to transactions described in Notice 2000-44. Ruble also "licensed" as "technology" a CARDS tax shelter, which is the same as or substantially similar to transactions described in Notice 2002-21, in exchange for a royalty payment.

### III. The John Doe Summons Should Be Enforced

#### A. The John Doe Summons Has Been Issued For a Legitimate Purpose.

26. The IRS is conducting an investigation to determine the correctness of returns filed by and the correct federal tax liabilities of certain United States taxpayers who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter" organized or sold by SAB&W.

27. As set forth above and in the Declaration of Revenue Agent Kan, it appears that SAB&W, during the period under investigation, was organizing and selling

"listed transactions" and other "potentially abusive tax shelters." The IRS has determined that such transactions have been structured for significant tax avoidance purposes.

### B. The Information Sought is Relevant to the Investigation of the John Does.

28. Once the participants in the "listed transactions" or other "potentially abusive tax shelters" are identified, the IRS can begin to determine the correctness of federal tax returns filed by the participants and determine the correct federal tax liabilities of the participants. Identification of the participants is the first necessary step to determining the correctness of the participants' returns and their correct tax liabilities.

### C. All Other Requirements for Enforcement Have Been Satisfied.

29. The IRS does not have possession of all identities of participants in "listed transactions" or other potentially abusive tax shelters organized or sold by SAB&W during the period January 1, 1996 through October 15, 2003. The IRS has identified a number of the participants, but not all of the participants.

30. The IRS has attempted to identify the participants in these potentially abusive tax shelters from its own records, but has found that such information cannot be located and/or is not readily available. This is due, in part, because inspection of a particular purchaser's return may not readily disclose the purchaser's involvement in the transaction or the potential understatement or

misstatement of income from involvement in the transaction. And, in any event, it is not feasible for the IRS to inspect every filed tax return or audit every taxpayer.

31. On December 22, 2001, the IRS published Announcement 2002-2, 2002-1 C.B. 304 (Disclosure Initiative), in which it encouraged taxpayers to disclose their participation in and tax treatment of tax shelters in exchange for the IRS' waiver of certain penalties under 26 U.S.C. §6662, if the IRS determined that the taxpayers made an underpayment of tax. As part of the IRS's Disclosure Initiative, taxpayers were required to identify the parties that promoted, solicited or recommended that they participate in the tax shelter. In response to the Disclosure Initiative, the IRS received approximately 80 Disclosure Statements identifying SAB&W as promoting, soliciting, or recommending their participation in certain tax shelters.

32. The IRS has also attempted to identify the participants from third-party records, including, but not limited to, KPMG, Ernst & Young, Diversified Group, Inc., BDO Seidman, and Presidio Advisors, but it does not appear that it has identified everyone.

33. On October 27, 2003, SAB&W responded to the "John Doe" Summons by providing the IRS with the names and addresses of some, but not all, of the participants in potentially abusive tax shelter transactions for which it had issued legal opinions.

34.    While the IRS has identified a number of the participants in these transactions, it does not believe that it has identified all of the participants. SAB&W acknowledges that it issued over six-hundred and twenty (620) opinions during the period January 1, 1996 through October 15, 2003, with respect "listed transactions" or other potentially abusive tax shelters. SAB&W also acknowledges that it has withheld the identities of over three-hundred and seventy (370) participants in these transactions because they have failed and/or refused to consent to SAB&W's disclosure of their identity to the IRS.

35.    As best as can be determined when a person's identity is unknown, there is no "Justice Department referral," as that term is described in §7602(d)(2), in effect with respect to any unknown "John Doe" for the periods under investigation.

36.    All administrative prerequisites for issuance of the John Doe Summon have been met.

    WHEREFORE, the petitioner respectfully prays that:

1.    This Court enter an order directing respondent to show cause, if any it may have, why it should not comply with and obey the John Doe Summons served upon it and each and every requirement thereof;

2.    This Court enter an order directing the respondent to obey the John Doe Summons served upon it, and each and every requirement thereof, and ordering attendance and testimony by a duly authorized representative of the respondent and the production of books, records, documents and other data as required by the terms of the summonses before Revenue Agent Kan, or any

authorized officer of the Internal Revenue Service, at such time and place as may hereinafter be fixed by Revenue Agent Kan, or any authorized officer of the Internal Revenue Service, or by this Court;

    3.    The United States recover its costs in maintaining this action; and

    4.    The Court render such other and further relief as is just and proper.

PATRICK J. FITZGERALD
United States Attorney

CRAIG OSWALD
Assistant U.S. Attorney

JOHN LINDQUIST
JENNIFER G. COHEN
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6561/6403

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Petitioner,

v.

SIDLEY AUSTIN BROWN & WOOD LLP, with respect to the matter of the tax liabilities of:

JOHN DOES, United States taxpayers who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter" organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor, Brown & Wood LLP.

    Respondent.

_____/

**03C 9355**

**JUDGE KENNELLY**

**MAGISTRATE JUDGE MASON**

## ORDER TO SHOW CAUSE

Upon the petition of the United States for enforcement of a John Doe Summons issued to and served upon Sidley Austin Brown & Wood LLP, it is

ORDERED that a duly authorized officer of Sidley Austin Brown & Wood LLP, appear before the United States District Court for the Northern District of Illinois, in the courtroom thereof presided over by the undersigned, on the __ day of _____, 2003, at _.m. to show cause why respondent Sidley Austin Brown & Wood LLP, should not be compelled to obey the Internal Revenue Service John Doe summons served upon it, as more particularly described in the Petition and the

supporting declaration of Revenue Agent Florence Kan and appendix of exhibits filed therewith. It is further

ORDERED that a copy of this Order, together with the petition and the supporting declaration of Revenue Agent Florence Kan and appendix of exhibits be served upon the respondent on or before **December __, 2003**, and that in accordance with the provision of Rule 4(c)(1) of the Federal Rules of Civil Procedure, such service may be effected by any special agent/revenue agent or revenue officer of the Internal Revenue Service. It is further

ORDERED that within ten (10) days of service of a copy of this Order and the petition with the supporting declaration and appendix of exhibits, the respondent shall file and serve a written response to the petition supported by appropriate affidavit, as well as any motions the respondent desires to make. All motions and issues raised by the respondent will be considered upon the return date of this Order. Only those issues raised by motion or brought into controversy by the responsive pleadings and supported by affidavit will be considered at the return of this Order and any uncontested allegations in the petition will be considered as admitted.

DONE and ORDERED at _____, this __ day of <u>December</u>, 2003.

_____
UNITED STATES DISTRICT JUDGE