# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9355 | **DATE** | 4/15/2004 |
| **CASE TITLE** | USA vs. Sidley Austin Brown | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants the Does' motions to intervene in part (16-1, 23-1, 24-1, 26-1, 27-2, 28-1, 30-1, 31-1, 32-1, 34-1 and 48-1). The Does are directed to file, on or before 4/20/04, a response to the Government's petition to enforce the summons addressing the issue on which the Court has permitted intervention. The Government is directed to reply on or before 4/23/04. The Court will rule on 4/29/04 at 9:30 a.m. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 2004 | |
| | Notified counsel by telephone. | | date docketed | 68 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 9355 |
| | ) | |
| SIDLEY AUSTIN BROWN & WOOD LLP, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case arises from an Internal Revenue Service investigation into the organization and sale of tax shelters by a former partner of Sidley Austin Brown & Wood (hereinafter "SAB&W") during his tenure at Brown & Wood, one of the predecessor firms to SAB&W. The United States has sought enforcement of a summons served on SAB&W to obtain the names of former clients of the firm. Forty-six of SAB&W's former clients, known collectively as the "Does," have moved to intervene so that they can argue that their identities are protected from disclosure by the attorney-client privilege.[1] The Court must decide whether to permit the Does to intervene.

---

[1] Those seeking to intervene are referred to by the firms representing them in this action. The two individuals represented by Arnstein & Lehr LLP are referred to as the "Arnstein Does"; the two individuals and two companies represented by Chamberlain, Hrdlicka, White, Williams & Martin are referred to as the "Chamberlain Does"; the three individuals, two companies and two trusts represented by Fulbright & Jaworski LLP are referred to as the "Fulbright Does"; the twenty-seven individuals represented by Katten Muchin Zavis Rosenman are referred to as the "Katten Does"; the four individuals represented by Martin, Brown & Sullivan, LTD, are referred to as the "Martin Does;" and the two individuals represented by Schiff Hardin LLP are referred to as the "Schiff Does."

1

## Procedural Background

On December 29, 2003 the Government sought enforcement of a John Doe summons served October 15, 2003 on SAB&W to obtain the names of taxpayers who "during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a 'listed transaction' or other 'potentially abusive tax shelter' organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor, Brown & Wood LLP." Summons (dated Oct. 15, 2003). The Court entered an order, after making a modification to meet an objection by the Government, directing SAB&W to provide notice of the summons to former clients "who received opinions from Brown & Wood LLP or respondent with respect to the transactions identified" in an attached appendix. Order of Jan. 12, 2004, ¶ 1. The Court gave SAB&W's former clients until January 23, 2004 to advise SAB&W of their intention to assert that their identities were protected by the attorney-client privilege, *id.* ¶ 2, and until February 19, 2004 to file a motion to be heard by the Court. *Id.* ¶ 7.

The Government and SAB&W petitioned the Court in early February to enter an agreed order that, among other things, modified the schedule set on January 12. Under this order, which the Court signed on February 6, 2004, SAB&W was to send notice by February 7 to "all persons: . . . (b) who objected to the January 13 Order on the grounds that they did not fall within the scope of Appendix A thereto, but who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a 'listed transaction' or other 'potentially abusive tax shelter' with respect to which petitioner or Brown & Wood LLP was paid a fee." Order of Feb. 6, 2004, ¶ 1. The agreed order gave SAB&W's former clients until February 13, 2004 to inform SAB&W that they objected to the disclosure of their identities.

2

*Id.* ¶ 2. The Government had until February 17, 2004 to move the Court to order SAB&W to produce the names of any objecting clients. *Id.* ¶ 6. The Court gave the clients whose identities SAB&W withheld until February 27, 2004 to seek to intervene in the enforcement action. *Id.* ¶ 7.

SAB&W disclosed the names of several hundred former clients whose identities SAB&W believes to be responsive to the summons. However, it withheld the names of approximately 100 former clients who objected to the disclosure of their identities. SAB&W Resp. to Mot. to Enforce ¶ 2. Forty-six of those former clients seek to intervene so that they can argue that (1) the attorney-client privilege bars SAB&W from disclosing their names and (2) their names are not responsive to the summons.

## Analysis

The Federal Rules of Civil Procedure provide four separate bases for intervention by a nonparty. Two bases for intervention are "of right" and two are "permissive." Rule 24(a) gives a nonparty the right to intervene when either (1) "a statute of the United States confers an unconditional right to intervene," or (2) "the applicant claims an interest relating to the property or transaction" at issue and "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Rule 24(b) states that the Court has discretionary authority to permit a nonparty to intervene when either (1) "a statute of the United States confers a conditional right to intervene," or (2) "an applicant's claim or defense and the main action have a question of law or fact in common." When considering whether to grant a motion for permissive intervention, the Court must "consider whether the intervention will unduly delay or prejudice

3

the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). The Does maintain that they have a right to intervene as of right, but they argue in the alternative that if they do not have a right to intervene, the Court should exercise its discretion and allow them to intervene under Fed. R. Civ. P. 24(b).

1.  **Intervention as of right**

    *a.   Intervention under Rule 24(a)(1)*

    Several of the Does argue that the statute governing third-party summonses gives them an unconditional right to intervene and, therefore, provides the statutory predicate necessary to intervene as of right under Rule 24(a)(1). The Does rely on 26 U.S.C. § 7609(b)(1), which states that "[n]ot withstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604." The Does find support for their reading of § 7609(b)(1) in a Sixth Circuit decision, stating that "once an enforcement action is begun, the Doe may intervene and challenge enforcement of the summons." *United States v. Ritchie*, 15 F.3d 592, 597 (6th Cir. 1994). But the Sixth Circuit did not support its statement with either citations or analysis – and it did not refer to 26 U.S.C. § 7609(b)(1), although it did refer to other subparts of § 7609 for the proposition that John Does do not have the right to either "intervene in the hearing on the summons's issuance" or "file a motion to quash the summons once it has been issued." *Id.* (citing §§ 7609(h)(2) and (b)(2)(A)). The Court declines to follow *Ritchie* because we believe it is contrary to the plain language of the statute and, therefore, wrongly decided.

    Section 7609(b)(1) gives those entitled to notice under § 7609(a) a right to intervene, thus whether a John Doe has a right to intervene depends on whether or not he is entitled to notice.

4

Section 7609(a) states that "any person (other than the person summoned) who is identified in the summons" is entitled to notice of the third-party summons. The Katten Does argue that although they are not identified by name in the summons, § 7609(a) does not specifically state that the person must be identified by name. However, when the statute is read as a whole, it is clear that the term "identified" in § 7609(a) means "named." A subpart outlining additional requirements for John Doe summonses defines such a summons as "[a]ny summons described in subsection (c)(1) which *does not identify* the person with respect to whose liability the summons is issued." 26 U.S.C. § 7609(f) (emphasis added). Inherently, then, a John Doe is not identified in a John Doe summons and, accordingly, he is not entitled to notice of the summons' issuance. The parties agree that the summons at issue is a John Doe summons. Therefore, § 7609(b)(1) does not give SAB&W's former clients a statutory basis for intervention as a matter of right under Rule 24(a)(1).

The Court can perceive a good policy argument for allowing intervention by a John Doe even if he is not entitled to notice under the statute. The purpose of intervention in this context is to ensure that the party who has a real interest at stake can intervene to raise appropriate challenges to the IRS summons. The recipient of a summons does not always have the incentive to challenge the summons, as this case may well illustrate: there is some indication that SAB&W's desire to distance itself from the practices of a partner of one of its predecessor firms has led the firm to forego potential objections to the summons. But the Court cannot read into § 7609 a right that is contrary to the plain language of the statute. Therefore, the Court concludes that the Does do not have a right to intervene under Rule 24(a)(1).

### b.  *Intervention under Rule 24(a)(2)*

To intervene as of right under Rule 24(a)(2), the Does must prove that (1) their application was timely; (2) they "have an interest relating to the subject matter of the action"; (3) there is a risk that their interests "will be impaired by the action's disposition"; and (4) their interests are not represented by the Government or SAB&W. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001). "[T]he lack of one element requires that the motion to intervene be denied." *Id.* There is no dispute as to the timeliness of the Does' motions or that any interest they may have will not be adequately represented by the existing parties and may be impaired if the summons is enforced. However, the Government claims the Does have failed to prove that they have a "'direct, significant, legally protectable'" interest as required by the Seventh Circuit to intervene as of right. *See Security Ins. Co. of Hartford v. Schipporeit*, 69 F.3d 1377, 1380 (7th Cir. 1995) (quoting *American Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989)).

The Supreme Court has recognized two legally protectable interests that may provide a basis for a taxpayer to intervene under Rule 24(a)(2) in an IRS summons enforcement proceeding: a privilege or a claim of abuse of process. *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (citation omitted). The Does contend that *Donaldson* is not good law because it was superseded by the enactment of § 7609. As discussed above, § 7609 provides the statutory predicate for those entitled to notice of a third-party summons to intervene as of right under Rule 24(a)(1). By enacting § 7609, Congress gave a group of people who previously could only attempt to intervene under Rule 24(a)(2) grounds for intervening under Rule 24(a)(1). But § 7609 did not alter the grounds for intervention as of right under Rule 24(a)(2), which is the

6

section addressed by the Supreme Court in *Donaldson*. Thus, the Court looks to *Donaldson* for guidance on the question of intervention under Rule 24(a)(2). The Court's reliance on *Donaldson* is supported by the Seventh Circuit's recent statement that "[a] colorable claim of privilege could constitute a legally protectable interest sufficiently significant to warrant intervention as of right, assuming that the three remaining factors are also satisfied." *United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003).

The Does' sole ground for intervention under Rule 24(a)(2) is the attorney-client privilege. The Government does not deny that the Does sought legal advice from SAB&W or its predecessor firm. But that does not necessarily mean that the attorney-client privilege gives the Does the right to intervene in these enforcement proceedings. In *BDO Seidman*, the Seventh Circuit held that former clients of an accounting firm could not intervene in an IRS summons enforcement action under Rule 24(a)(2) to assert that their identities were protected by the tax practitioner-taxpayer privilege created by 26 U.S.C. § 7525. The Does argue that the Court should not follow *BDO Seidman* because the Does are asserting the attorney-client privilege and not a privilege created by statute. The Court is not persuaded that the distinction matters. The Seventh Circuit defined the parameters of the § 7525 tax practitioner-taxpayer privilege by equating it with the attorney-client privilege, determining whether the § 7525 privilege gave the clients a right to intervene by analyzing whether the attorney-client privilege would protect the clients' identities and reasoning that the same conclusion would apply to those asserting the tax practitioner-taxpayer privilege. *Id.* at 810 ("Because the scope of the tax practitioner-client privilege depends on the scope of the common law protections of confidential attorney-client communications, we must look to the body of common law interpreting the attorney-client

7

privilege to interpret the § 7525 privilege."). For all practical purposes, the Seventh Circuit's decision in *BDO Seidman* speaks as much to the scope of the attorney-client privilege as it does to the tax practitioner-taxpayer privilege.

The Seventh Circuit in *BDO Seidman* isolated two essential elements that it said must be present for the attorney-client privilege (and the § 7525 privilege) to constitute a protectable interest giving rise to a right to intervene under Rule 24(a)(2). The court defined these "essential elements" of the attorney-client privilege as the existence of a communication and the confidential nature of the contents of that communication. *Id.* at 811 (citations omitted). The Seventh Circuit found against BDO's clients on both points, concluding that the clients' identities were neither communications *nor* confidential. A close reading of the Seventh Circuit's opinion makes clear that the failure to establish only one element – *either* a communication *or* confidentiality – would defeat a motion to intervene under Rule 24(a)(2).

### (i) An expectation of confidentiality

The Does and the Government vigorously dispute whether the Does had an expectation of confidentiality with regard to their interactions with SAB&W. In *BDO Seidman* the Seventh Circuit concluded that BDO Seidman's former clients did not have an expectation of confidentiality in their identity vis-a-vis the accounting firm, reasoning:

> the Does' participation in potentially abusive tax shelters is information ordinarily subject to full disclosure under the federal tax law. *See* 26 U.S.C. §§ 6111, 6112. Congress has determined that tax shelters are subject to special scrutiny, and anyone who organizes or sells an interest in tax shelters is required, pursuant to I.R.C. § 6112, to maintain a list identifying each person to whom such an interest was sold. This list-keeping provision precludes the Does from establishing an *expectation of confidentiality* in their communications with BDO, an essential element of the attorney-client privilege and, by extension, the § 7525 privilege. At the time that the Does communicated their interest in participating in tax shelters that BDO organized or sold, the Does should have known that BDO was

8

obligated to disclose the identity of clients engaging in such financial transactions. *Id.* at 812 (citation omitted; emphasis in original). The Government urges us to interpret *BDO Seidman* as holding that a taxpayer never has an expectation of confidentiality in his identity when he seeks legal advice about transactions that the IRS eventually concludes are prohibited tax shelters. That is an overstatement of the holding in *BDO Seidman*. Rather, the court held that a taxpayer does not have an expectation of confidentiality in his identity – and, accordingly, cannot intervene to assert the privilege – if the taxpayer should have known at the time he consulted the professional, in this case an attorney, that the person would have had to disclose the taxpayer's identity under 26 U.S.C. § 6112.

Section 6112 requires "[a]ny person who – (1) organizes any potentially abusive tax shelter, or (2) sells any interest in such a shelter" to "maintain . . . a list identifying each person who was sold an interest in such shelter . . . ." 26 U.S.C. § 6112(a). Under Treasury regulations adopted in 2003, a person who provides certain types of advice with respect to a tax shelter transaction is considered an organizer or seller of the shelter for purposes of the § 6112 reporting requirements. 26 C.F.R. § 301.6112-1(c) (2004). But at the time the Does sought advice from SAB&W, an organizer was defined as "any person who discovers, creates, investigates, or initiates the tax shelter investment, devises the business or financial plans for the tax shelter, or carries out those plans through negotiations or transactions with others." 26 C.F.R. § 301.6112-1T ¶ A-5 (temporary). Similarly, a seller was defined as:

> (a) Any organizer, underwriter, broker, or dealer (or other similar person) who transfers any interest in a tax shelter;
> (b) Any agent who negotiates the transfer of any interest in a tax shelter for the tax shelter, an organizer, or other person described in paragraph (a) of this A-6; and
> (c) Any investor (i.e., a person not described in paragraph (a) of this A-6) who transfers any interest in a tax shelter.

9

§ 301.6112-1T ¶ A-6.

Several of the Does argue that under the regulations in effect when they sought advice from SAB&W, the firm would not have had to report their identities because the Does did not participate in tax shelters organized or sold by SAB&W. Other Does raise the subtly distinct argument that at the time they sought advice from SAB&W, they did not know that the firm organized or sold tax shelters, implying that it cannot be assumed that they should have known that SAB&W would have had to report their names under § 6112. And SAB&W has maintained throughout these proceedings that it was not an organizer or seller of listed transactions or potentially abusive tax shelters. For example, the agreed order dated February 6, 2004 specifically stated that:

> The disclosure of identities and production of documents by respondent pursuant to this Order or the January 13 Order do not constitute a concession by respondent that it is an "organizer" or "seller" of tax shelters under §§ 6111-6112 of the Internal Revenue Code. Neither this Order nor the Court's January 13, 2004 [sic] shall be construed as making any finding as to whether respondent is an "organizer" or "seller" of tax shelters under §§ 6111-6112 of the Internal Revenue Code.

Order of Feb. 6, 2004, ¶ 8.

The issue of whether SAB&W organized or sold tax shelters within the meaning of § 6112 is a complicated question. Determining what each of the Does should have known at the time he sought advice from SAB&W would prove time-consuming, to say the least. Fortunately, the Court need not wade further into this factual dispute to determine whether the Does have a right to intervene under Rule 24(a)(2). The Does cannot establish a right to intervene to assert the attorney-client privilege unless they can establish both the existence of a communication and an expectation of confidentiality in that communication. For the reasons discussed below, we

find that the Does have failed to show that their identities constitute communications. Therefore we need not determine whether the Does had an expectation of confidentiality regarding their identities.

### (ii) A communication

As the Seventh Circuit recognized in *BDO Seidman*, because "[t]he attorney-client privilege protects confidential *communications* made by a client to his lawyer, and so ordinarily the identity of a client does not come within the scope of the privilege." *BDO Seidman*, 337 F.3d at 811 (emphasis in original; citing *Tillotson v. Boughner*, 350 F.2d 663, 666 (7th Cir. 1965)). In other words, a client's identity usually does not constitute a protectable communication. "However, over the years, a limited exception to this general rule has developed; the identity of a client may be privileged in the rare circumstance when so much of an actual confidential communication has been disclosed already that merely identifying the client will effectively disclose that communication." *Id.* (citations omitted). The Does argue that the Court should apply the exception rather than the general rule and hold that so much is already known of the Does interactions with SAB&W that disclosing their identities will be tantamount to revealing their communications with the firm.

BDO Seidman's clients took the same position that the Does articulate today. They argued that the IRS knew so many details about the firm's organization and sale of tax shelters that forcing BDO to reveal a client's identity would "inevitably reveal that client's *motivation* for seeking tax advice from BDO." *Id.* at 812 (emphasis in original). The Seventh Circuit rejected that argument, stating:

> The Does have not established that a confidential communication will be
> disclosed if their identities are revealed in response to the summonses. Disclosure

11

> of the identities of the Does will disclose to the IRS that the Does participated in one of the 20 types of tax shelters described in its summonses. It is less than clear, however, as to what motive, or other confidential communication of tax advice, can be inferred from the information alone.

*Id.*

The Court likewise finds that the government does not know "so much of an actual confidential communication" between the Does and SAB&W that disclosing the Does' identities "will effectively disclose that communication." *Id.* at 811. The Does contend that the government generally knows more about the advice given to the Does in this case than it knew about the advice given to BDO Seidman's clients. To assess the Does' claims, the Court reviewed the record of *BDO Seidman*, which is part of the records of this court (Case No. 02 C 4822). If and when the summons is enforced and the Does' names are revealed by SAB&W, it does not appear that the government will know any more in this case than it did in *BDO Seidman* – that is, the government will know the named individuals received tax advice from SAB&W but will not know the substance of the advice. If the government did not know enough about the communications between BDO Seidman and its clients for disclosure of the clients' identities to constitute a communication, the exception cannot apply in this case either.

The Does argue that the government will know the substance of the advice SAB&W rendered because it has form opinion letters the firm provided to purchasers of the tax shelters allegedly organized or sold by SAB&W. The Court disagrees; awareness of the terms of form opinion letters does not translate to knowledge of the substance of the specific advice given to specific clients. In this regard, the case is not like those cited by the Does and those cited in *BDO Seidman* in which disclosure of the client's identity actually disclosed the advice the attorney gave. In particular, in *United States v. Liebman*, 742 F.2d 807 (3d Cir. 1984), the case cited by

the Does as being the most like this one, a lawyer had admitted to the IRS that he had advised his clients that the fees they paid him for investigating real estate partnerships for them were deductible as a legal expense. *Id.* at 808. The IRS believed the fees were properly characterized as non-deductible brokerage fees. *Id.* The government sought enforcement of a John Doe summons to the lawyer seeking the names of the clients whom he advised that his fees were deductible. *Id.* The lawyer objected, arguing "that enforcement of the summons would violate the attorney-client privilege." *Id.* The court agreed because the affidavit filed in support of the summons revealed the entire content of the communications between the lawyer and the clients whose names were sought. *Id.* at 809. The Third Circuit explained:

> The affidavit of the IRS agent supporting the request for the summons not only identifies the subject matter of the attorney-client communication, but also describes its substance. That is, the affidavit does *more* than identify the communications as relating to the deductibility of legal fees paid to [the firm] in connection with the acquisition of a real estate partnership interest.

*Id.* (citation omitted; emphasis added). But in the case presently before the Court, the declaration offered in support of the summons states only that SAB&W issued hundreds of opinion letters to clients. At most the government knows the subject matter of various opinions that SAB&W broadly dispensed; it does not know what SAB&W told any particular client. The Court finds the facts in this case much more closely resemble the facts in *BDO Seidman* than the facts in *Liebman*.

Because the Does have failed to show that their identities constitute a communication, they cannot assert that the attorney-client privilege protects their identities. Accordingly, the Does do not have a protectable interest at stake in this enforcement action, and thus they do not have a right to intervene under Rule 24(a)(2).

13

## 2. Permissive Intervention

The Court may permit a party to intervene under Rule 24(b)(1) if a statute provides a conditional right to intervene. The Does have not offered a statutory basis for intervention under Rule 24(b)(1), and thus the Court will only consider whether to allow the Does to intervene under Rule 24(b)(2). The government argues that *Donaldson* bars permissive intervention under Rule 24(b) as a matter of law in IRS summons enforcement proceedings. It insists that a party who cannot intervene as of right is not entitled to intervene under Rule 24(b). That certainly is not the general rule. *See, e.g., Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) (finding intervention in a contract dispute under Rule 24(b)(2) would be appropriate even if party did not have right to intervene under Rule 24(a)). And the Court reads nothing in *Donaldson* suggesting that Rule 24(b) becomes a nullity in an IRS summons enforcement proceeding once a court determines that a party does not have the right to intervene under Rule 24(a). Because the Court is unconvinced that Rule 24(b) does not apply in IRS summons enforcement proceedings, we will apply the general standard for intervention under Rule 24(b).

The Seventh Circuit has identified two requirements which "must be met before a court may exercise its discretionary power to grant intervention under 24(b)(2). The proposed intervenor must demonstrate that there is (1) a common question of law or fact, and (2) independent jurisdiction." *Id.* (citing *Reedsburg Bank v. Apollo*, 508 F.2d 995, 1000 (7th Cir. 1975)). Once these requirements are met, "intervention under 24(b)(2) is entirely discretionary." *Id.* (citing *Keith v. Daley*, 764 F.2d 1265, 1272 (7th Cir. 1985)). However, the Court's exercise of its discretion is not unguided. The text of Rule 24(b) advises that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication

14

of the rights of the original parties."

In a summons enforcement proceeding, the IRS "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." *United States v. Powell*, 379 U.S. 48, 57-58 (1964). Once the government has met its "slight" burden, the burdens of production and proof shifts to the party opposing the summons to "'establish any defenses or . . . prove that enforcement would constitute an abuse of the court's process.'" *United States v. Kis*, 658 F.2d 526, 536, 538 (7th Cir. 1981) (quoting *United States v. Genser*, 582 F.2d 292, 302 (3d Cir. 1979)). This burden is "'a heavy one.'" *Id.* (quoting *United States v. LaSalle National Bank*, 437 U.S. 298, 316 (1978)). The party can challenge the summons "'on any appropriate ground.'" *Powell*, 379 U.S. at 58 (quoting *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)). Defenses to enforcement include "disproving the existence of one of the *Powell* factors," *2121 Arlington Heights Corp. v. IRS*, 109 F.3d 1221, 1224 (7th Cir. 1997), showing "the IRS issued the summons in bad faith," *id.*, or "asserting that the summons is ambiguous, vague, or otherwise deficient in describing the material requested." *United States v. Beacon Federal Savings & Loan*, 718 F.2d 49, 54 (2d Cir. 1983) (quoting S. Rep. No. 938, 94th Cong., 2d Sess. 370 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad. News 2897, 3799-800).

The Does want to intervene so that they can argue that: (1) the summons is unduly ambiguous; (2) the summons' use of regulations established in 2003 to define producible information from earlier dates constitutes an improper retrospective application of those regulations; (3) the agreed orders of January 12 and February 6 improperly broadened the

15

summons; and (4) that the identities of at least some of the Does are not responsive to the summons because SAB&W was either not an organizer or seller of the tax shelters they purchased, or because the particular transactions in which they participated were not "listed transactions" or "abusive tax shelters."

The Court can dispose quickly of two of these contentions. First of all, as the Government correctly points out in its supplemental memorandum, the January 12 and February 6 orders did not alter the scope of the summons but rather simply defined the universe of persons to whom SAB&W would provide notice of its receipt of the summons. If and when SAB&W is called upon to comply with the summons, the scope of its obligation to produce information will be defined by the summons itself, not the January 12 and February 6 orders. Second, the Does cite no authority, and the Court is aware of none, supporting the proposition that their quarrel with the summons' reference to the 2003 regulations is a proper ground for contesting the summons' enforcement. In any event, we see no basis to bar the IRS from using in a summons a definition promulgated in 2003 to describe information that must be produced regarding earlier periods; a challenge to retrospective application of regulations is appropriately raised in the context of an actual assessment of taxes, not in a summons enforcement proceeding. Because these two issues are not appropriate defenses, they are not "common questions" within the meaning of Rule 24(b)(2).

The Court does not believe that various Does' contentions that their identities are not covered by the summons because SAB&W did not organize or sell the particular transaction in which they participated, or because the particular transaction was not of the type described by the summons, constitute an appropriate basis to challenge enforcement. This is not a challenge to

the summons itself; put another way, it is not a contention that "enforcement would constitute an abuse of the court's process." *Kis,* 658 F.2d at 538 (internal quotation marks omitted). In any event, allowing intervention to permit the Does to litigate the particulars of their transactions or the details of SAB&W's involvement in those transactions would run afoul of Rule 24(b)'s admonition that permissive intervention is inappropriate when it would unduly delay the adjudication of the original parties' rights. The Does say that if permitted to intervene to litigate these issues, they would seek discovery from SAB&W on these points and an evidentiary hearing at which they would contest, Doe by Doe, whether their identities are covered by the summons. The Court could permit such a challenege only if we ignored the Seventh Circuit's "emphatic[ ]" warning that summons enforcement proceedings "are intended to be summary in nature." *Id.* at 535.

The Does' last remaining contention is that they should be permitted to intervene to argue that the summons is unenforceable as unduly ambiguous, because it leaves it to SAB&W to determine the questions of whether it was an organizer or seller of transactions in which the Does participated and whether those transactions were "listed transactions" or "abusive tax shelters." We make no comment regarding the merits of this argument; whether the summons is ambiguous is an issue to be determined when the Court decides whether to enforce the summons, not in the context of a motion to intervene. But a dispute regarding the sufficiency of the description of the material to be produced is an appropriate basis for a challenge to a summons in an enforcement proceeding. *See Beacon Federal Savings & Loan,* 718 F.2d at 54 (citing legislative history of I.R.C. § 7609). SAB&W has made it clear that it has no intention of pursuing such a challenge. *See* SAB&W's Resp. to U.S.'s Pet. to Enforce ¶ 4. Resolution of the issue of ambiguity will

17

require no discovery, no evidentiary hearing, and no complicated factual determinations, and thus it can be accomplished promptly and without undue delay. For these reasons, the requirements of Rule 24(b)(2) are met as to this potential defense, and thus the Court will permit the Does to intervene to raise this single challenge to the enforcement of the summons.

## Conclusion

For the reasons stated above, the Court grants the Does' motions to intervene in part [docket # 16-1, 23-1, 24-1, 26-1, 27-1, 28-1, 30-1, 31-1, 32-1, 33-1, 34-1 and 48-1 ]. The Does are directed to file, on or before April 20, 2004, a response to the Government's petition to enforce the summons addressing the issue on which the Court has permitted intervention. The Government is directed to reply on or before April 23, 2004. The Court will rule on April 29, 2004 at 9:30 a.m.

MATTHEW F. KENNELLY
United States District Judge

Date: April 15, 2004