Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 9355 | DATE | 4/28/2004 |
| CASE TITLE | USA vs. Sidley Austin Brown & Wood | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the na of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Ord the Court grants the Government's petition to enforce the summons. The Government's motion reconsideration of order granting permissive intervention is denied. All other pending motions are to terminated. The Clerk of Court is directed to enter judgment ordering Sidley Austin Brown & Wood comply with the summons.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 2 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 95 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | APR 2 9 2004 | |
| OR | courtroom deputy's initials | 2004 APR | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 03 C 9355 |
| ) | |
| SIDLEY AUSTIN BROWN & WOOD LLP, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case arises from an Internal Revenue Service investigation into the organization and sale of tax shelters by a former partner of Sidley Austin Brown & Wood (hereinafter "SAB&W") during his tenure at Brown & Wood, one of the predecessor firms to SAB&W. The United States has sought enforcement of a summons served on SAB&W to obtain the names of former clients of the firm. We allowed more than forty former clients (referred to as the "Does" or "Intervenors") to intervene under Rule 24(b) to challenge the summons on the ground that it is ambiguous. For the reasons stated below, the Court grants the Government's motion to enforce the summons and denies the Government's motion to reconsider the decision to allow intervention.

## Analysis

Before determining whether the summons should be enforced, the Government urges, the Court should reconsider its decision to allow SAB&W's former clients to intervene in these

proceedings. Specifically, the Government argues that the Does do not meet the jurisdictional prerequisites for intervention. Because the Court did not fully discuss the issue of jurisdiction in its opinion permitting the Does to intervene under Rule 24(b), the Court will do so briefly now.

The Government reasons as follows: in finding the Does do not have a right to intervene under Rule 24(a)(2), the Court concluded that the Does did not have a "protectable interest"; "absent a 'protectable interest,' the Does do not have a legally redressable injury"; and "absent a legally redressable injury, the Court lacks jurisdiction" to consider the Does' objections to enforcement." U.S. Mot. for Reconsideration at 5. There are two significant flaws in the Government's logic. First of all, it is an "open question" in the Seventh Circuit as to "whether Article III standing is required for permissive intervention under Rule 24(b)." *Transamerica Insurance Co. v. South*, 125 F.3d 392, 396 n.4 (7th Cir. 1997). In fact, "it appears that the intervenor-by-permission does not even have to be a person who would have been a proper party at the beginning of the suit, since of the two tests for permissive joinder of parties, a common question of law or fact and some right to relief arising from the same transaction, only the first is stated as a limitation on intervention." C. Wright & A. Miller, Federal Practice and Procedure (Civil) § 1911 (2d ed. 1986). Second, "[t]he standing doctrine, which is derived from the Article III case or controversy requirements of the Constitution, applies only to plaintiffs." *Wynn v. Carey*, 599 F.2d 193, 196 (7th Cir. 1979). Under normal circumstances, a defendant need not show an injury to be a party to a case – and the Intervenors are effectively defendants in this case, raising defenses to the enforcement of the summons.

Even if the Does had to demonstrate an injury in fact to intervene, they have done so. The Government argues that "[t]he law does not recognize an IRS examination as an injury."

2

U.S. Mot. for Reconsideration at 5-6. But it is undeniable that "the burden on a taxpayer of being tied up in an audit that may continue for months, if not years, and may or may not culminate in further civil or criminal proceedings, should not be underestimated." *United States v. Beacon Federal Savings & Loan*, 718 F.2d 49, 54 (2d Cir. 1983) (quoting *United States v. Schipani*, 289 F. Supp. 43, 63 (E.D.N.Y. 1968), *aff'd*, 414 F.2d 1262 (2d Cir. 1969)). In addition, SAB&W has information about the Does that will be communicated to the Government if the summons is enforced; the Government will obtain information about them that it does not now have. Whether or not the Does have a protectible interest sufficient to establish a right to intervene under Rule 24(a)(2), they risk a prospective injury sufficient to create Article III standing, assuming that is a prerequisite for permissive intervention as a defendant. The Government's contrary argument amounts to a contention we have already rejected, namely that if a person cannot intervene as of right in a summons enforcement action, he cannot intervene at all. The Government has cited no authority supporting the proposition that Rule 24(b) is wiped from the books in summons enforcement cases. For these reasons, the Court denies the Government's motion for reconsideration. We now therefore consider whether the summons should be enforced.

Before reaching the merits of the Intervenors' opposition to enforcement, the Court will consider two arguments by the Government that are in essence procedural. The Government argues that the Intervenors' ambiguity claim cannot be raised in these proceedings because it is just an attempt to challenge the issuance of the summons, and such challenges cannot be raised in enforcement proceedings. A John Doe IRS summons cannot be issued until a court has determined that

3

> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
> (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f). The Supreme Court has explained that "[w]hat § 7609(f) does is to provide some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer." *Tiffany Fine Arts, Inc., v. United States*, 469 U.S. 310, 321 (1985). It puts the court in "the place of the affected taxpayer under §§ 7609(a) and (b) and exerts a restraining influence on the IRS." *Id.* In this case, Judge Suzanne Conlon approved the issuance of the John Doe summons.

The Government argues that the Court cannot revisit Judge Conlon's determination that the § 7609(f) criteria have been met. The Government points out that three courts of appeals have held that "the criteria for the service of a third-party, John Doe summons under section 7609(f) cannot be collaterally challenged during proceedings to enforce the summons." *United States v. John G. Mutschler & Associates, Inc.*, 734 F.2d 363, 366 (8th Cir. 1984); *United States v. Samuels, Kramer & Co.*, 712 F.2d 1342, 1346 (9th Cir. 1983) ("Notwithstanding the added protection sections 7609(f) and (h) provide against improper *issuance* of John Doe summonses, then, the sections do not expand beyond the *Powell* criteria the substantive grounds on which a record-keeping taxpayer can resist *enforcement* of a summons once it has been served." (emphasis in original; citation omitted)); *Agricultural Asset Management Co. v. United States*, 688 F.2d 144, 145-46 (2d Cir. 1982) ("[T]he criteria in 26 U.S.C. § 7609(f) governing ex parte

4

issuance of a John Doe summons pursuant to 26 U.S.C. 7609(h)(1) are not appropriate grounds to challenge enforcement of the summons.").

If the Intervenors were challenging the summons on the ground that it failed to "relate[] to the investigation of a[n] . . . ascertainable group or class of persons," the Government would be correct that the Intervenors are pursuing an invalid argument against enforcement. But that is not the Intervenors' claim. This is best illustrated by comparing the Intervenors' claim of ambiguity to the arguments against enforcement in the cases cited by the Government. In *John G. Mutschler & Associates*, the party opposing enforcement argued that the affidavit supporting issuance of the summons had been misleading and that the Government had alternative means of learning the Does' names. In *Samuels, Kramer*, the party opposing enforcement attempted to challenge the factual findings made at the time the summons was issued. And in *Agricultural Asset Management Co.*, Ag Asset opposed enforcement of the summons on the ground that investigations of known participants in the program had not resulted in findings of liability; the Government had failed to show it had a reasonable basis for doubting the veracity of the Does' tax returns; and the Government had failed to show it did not already have the information it sought. *In re Agricultural Asset Management Co.*, 541 F. Supp. 213, 216 (N.D.N.Y. 1982). In contrast, the Intervenors argue that the summons is ambiguous. There is no indication that Judge Conlon addressed that point when she authorized issuance of the summons.

As we previously noted in our decision permitting intervention, ambiguity is generally an appropriate defense against enforcement of a summons. *Beacon Federal Savings & Loan*, 718 at 54 (quoting S. Rep. No. 938, 94th Cong., 2d Sess. 370 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad. News at 3799-800). The Government argues, however, that the Intervenors cannot

challenge enforcement of the summons on the basis of ambiguity in this case because SAB&W has already compiled a list of names that they believe to be responsive to the summons. The Intervenors' claim cannot be dismissed so easily.

The Government bases its argument on *United States v. Berg*, 20 F.3d 304 (7th Cir. 1994), in which the court considered an appeal from a contempt citation by an individual who refused to comply with a summons directing him to appear to turn over documents regarding two of his companies, Particle Data Inc. ("PDI") and Particle Data Laboratories, Ltd. ("PDL"). Berg had assembled the documents he believed were responsive to the summons, but he refused to turn them over to the Government. On appeal he argued that he should not have been held in contempt because the summonses and orders were vague. *Berg*, 20 F.3d at 310. The court stated that it would

> not entertain an argument concerning the clarity of the orders as they pertain to PDI and PDL because Berg had in fact assembled those documents but simply refused to turn them over to the Service. The fact that he actually compiled the required materials renders moot any argument that an ambiguity in the order prevented him from complying.

*Id.* at 311. The Government urges the Court to extrapolate from these two sentences a general rule that arguments of ambiguity are moot if the summonsed party has assembled documents it believes are responsive to the summons.

This case exemplifies why such a rule would be untenable in some situations. The Intervenors do not deny that SAB&W has assembled a list of names in response to the summons. But they argue that the list is overinclusive because the summons is ambiguous and SAB&W has an incentive to read any ambiguities in favor of disclosure in hopes of pacifying the IRS. The fact that SAB&W has compiled a list of names does not show that the summons is not vague or

ambiguous – it may just show SAB&W's desire to cooperate. *Berg* does not render moot the Intervenors' claim of ambiguity.

Thus we must address the claim of ambiguity on the merits. In a summary enforcement proceeding, the initial burden is on the Government to show

> (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to the purpose, (3) that the information sought is not already within the Commissioner's possession, and (4) that the administrative steps required by the Code have been followed in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

*United States v. Kis*, 658 F.2d 526, 536 (7th Cir. 1981) (quoting *United States v. Powell*, 379 U.S. 48, 57-58 (1964)). The Government has met this "slight" burden. *Id.* Thus the "heavy" burdens of production and of proof shift to the Intervenors to show that the summons should not be enforced. *Id.* at 538 (citation omitted). "The taxpayer must 'establish any defenses or ... prove that enforcement would constitute an abuse of the court's process.'" *Id.* (citation omitted). And "[t]he taxpayer must do more than just produce evidence that would call into question the Government's prima facie case. The burden of proof in these contested areas rests squarely on the taxpayer." *Id.* at 538-39. The Court sees two ways of analyzing the Intervenors' claim of ambiguity: as an attempt to rebut the Government's prima facie case on the issue of relevance or as a facial challenge to the sufficiency of the summons. But we conclude that the Intervenors have failed to meet their burden of proof under either theory.

The Government suggests that the Intervenors' claim of ambiguity is really a claim that their identities are not relevant to the Government's investigation – a challenge to the Government's prima facie case for enforcement. Although the Intervenors do not explicitly raise

7

the issue of relevancy, the Government's interpretation of the Intervenors' argument is not entirely off the mark. As we mentioned earlier, the Intervenors' primary concern with the summons as written is that SAB&W will read the summons overinclusively and provide more names than are necessary. The issue of overinclusiveness is closely related to the issue of relevance. *See United States v. Turner*, 480 F.2d 272, 278-79 (7th Cir. 1973) (discussing whether a summons was too broad in terms of whether the information sought was relevant); *United States v. BDO Seidman, LLP*, 225 F. Supp. 2d 918, 920 (N.D. Ill. 2002) (recognizing no overbreadth is the corollary requirement of relevance).

The Government must show only that the summons seeks information with "*potential* relevance." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (emphasis in original). "[T]he standard for relevancy in summons enforcement cases is relaxed." *2121 Arlington Heights Corp. v. IRS*, 109 F.3d 1221, 1224 (7th Cir. 1997). This is because the IRS "can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized." *Arthur Young & Co.*, 465 U.S. at 814. The Intervenors cannot substitute their opinion of relevance for that of the IRS: "If the target's own opinion of relevance controlled, the entire audit process would be eviscerated." *United States v. Arthur Young & Co.*, 677 F.2d 211, 216 (2d Cir. 1982), *aff'd in part and rev'd in part on other grounds*, 465 U.S. 805 (1984).

The Seventh Circuit's opinion in *United States v. Turner* is instructive. In *Turner* an undercover IRS agent asked Turner to prepare his tax return. Because of inaccuracies in the return, the IRS questioned the veracity of all the returns Turner had prepared. The IRS issued Turner a summons to provide the names of people whose tax returns he had prepared in 1970 and 1971. Turner challenged the summons on the ground that it was overly broad. The Seventh

8

Circuit addressed his challenge as one as to relevancy. It explained that "[t]he government need only show that the records it seeks are relevant and material to its investigation, *i.e.*, that the inspection of the desired records might throw light upon the correctness of a taxpayer's return." *Turner*, 480 F.2d at 279 (citing *United State v. Shlom*, 420 F.2d 263, 265 (2d Cir. 1969), cert. denied, 397 U.S. 1074 (1970)). The court concluded that based on the fact that Turner had prepared one return inaccurately, "the government [had] made a sufficient showing of its reasons to scrutinize the tax returns of particular unnamed persons and to redetermine their tax liabilities." *Id.* (citation omitted).

The facts in this case are somewhat similar. The Government attached to its petition for enforcement an affidavit and exhibits suggesting that SAB&W marketed tax shelters and sold opinion letters to tax shelter participants. Just as the IRS had reason to question the tax liability of Turner's clients, the IRS has reason to question the accuracy of returns filed by those who received opinion letters from SAB&W. The IRS has reason to believe that those who received opinion letters from SAB&W regarding questionable tax transactions may have participated in listed transactions or abusive tax shelters. The Intervenors dispute who actually sold them the tax transactions in which they participated or whether they knew SAB&W had an interest in the shelters, but that does not diminish the Government's reasons for believing the Intervenors have understated their tax liability. If one false return prepared by Turner made his other clients' names relevant to the IRS's investigation, the evidence the IRS has obtained about SAB&W's practices likewise makes the Intervenors' names relevant to the extent required under *Kis*. Thus the Intervenors have failed to rebut the Government's prima facie case for enforcement.

The Court next considers the Intervenors' claim as a facial challenge to the sufficiency of

9

the summons. The Intervenors argue that the summons leaves SAB&W to interpret nine terms and phrases with guidance as to their meaning only from Treasury regulations and notices, which "themselves are uncertain and require subjective judgment." Intervenors Brief Opposing Enforcement at 2. The summons states:

> Please produce the name, address and taxpayer identification number for each United States taxpayer who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a 'listed transaction' or other 'potentially abusive tax shelter' organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor, Brown & Wood LLP.

Summons (dated Oct. 15, 2003). The Intervenors argue seven of the terms and phrases are ambiguous. These phrases can be divided into two categories: those in common usage and those defined by Treasury regulations. We will address the former first.

The Intervenors argue that the following terms are ambiguous because they are not defined in the summons: "United States taxpayer," "participated," "transaction," and "was or later became." We agree with Judge Leisure's statement that "protestation that phrases in the summonses such [as] 'any subsidiary or affiliate' are impermissibly vague is disingenuous to say the least." *United States v. Diversified Group, Inc.*, No. M-18-304, 2002 WL 31947904, at *4 (S.D.N.Y. Dec. 13, 2002). These phrases have common meanings, and when taken in context, they are not at all ambiguous.

The second category of phrases challenged by the Intervenors are those defined in the summons by reference to Treasury regulations and notices:

> As a guide to your compliance, as used herein:
> A. The term "potentially abusive tax shelter" is defined by 26 U.S.C. § 6112 and Treas. Reg. § 301.6112-1(b), without regard to the effective date of this regulation;

10

B.  The term "listed transaction" is defined by Treas. Reg. § 301.6111-2(b)(2) and 301.6112-1(b)(2)(i)(A), incorporating by reference a transaction defined in Treas. Reg. § 1.6011-4(b)(2), without regard to the effective dates of these regulations.

C.  The terms "organizer" and "seller" are defined by Treas. Reg. § 301.6112-1(c), without regard to the effective date of this regulation.

Summons (dated Oct. 15, 2003). The Intervenors argue that the regulations are complicated and vague, forcing SAB&W to draw legal conclusion to give the terms in the summons meaning. In *Diversified Group*, the court refused to entertain the argument that "the summonses require DGI to make legal judgments." *Diversified Group*, 2002 WL 31947904, at *4. Though we believe the issue is worth discussion, we similarly find the claim lacking in merit.

The Court noted in an earlier opinion that "[t]he issue of whether SAB&W organized or sold tax shelters within the meaning of § 6112 is a complicated question." *United States v. Sidley Austin Brown & Wood LLP*, No. 03 C 9355, 2004 WL 816448, at *6 (N.D. Ill. April 15, 2004). But just because the issue is complicated does not necessarily mean the governing regulations are ambiguous or impermissibly require SAB&W to draw legal conclusions. The Government has referenced regulations that define the terms with a great deal of particularity. Although the applicable regulations are rather long, this is not particularly unusual with IRS regulations, and the Court does not believe that the regulations referenced in the summons are so vague or ambiguous as to make the summons unenforceable. *Cf. Chicago Board of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 739 (7th Cir. 1987) (rejecting a void-for-vagueness challenge to an ordinance because it "incorporates municipal laws and regulations and provides twenty-seven examples of what the term means," which the court felt constituted a "clear and detailed treatment").

11

Any marginal uncertainty that the summons leaves with SAB&W does not defeat its enforceability. Some "[u]ncertainty is a fact of legal life." *Coleman v. Commissioner of Internal Revenue*, 791 F.2d 68, 71 (7th Cir. 1986) (finding "the ambiguities that lurk in 'frivolous' (or any other word) in marginal cases do not prevent the imposition of penalties"). And though a finding of liability for tax deficiencies necessarily will involve legal conclusions, the summons does not ask SAB&W to make determinations of liability. *Kis*, 658 F.2d at 535 ("[Summons enforcement actions] occur . . . at only the investigative stage of any action against a taxpayer, and no guilt or liability on the part of the taxpayer is established."). The Court does not believe that the summons requires SAB&W impermissibly to draw legal conclusions regarding unduly vague terms in order to comply with the terms of the summons. The Intervenors have failed to meet their heavy burden of showing the summons is unenforceable as written.

## Conclusion

For the reasons stated above, the Court grants the Government's petition to enforce the summons [docket # 1]. The Government's motion for reconsideration of order granting permissive intervention is denied. All other pending motions are terminated. The Clerk is directed to enter judgment ordering Sidley Austin Brown & Wood to comply with the summons.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 28, 2004